PER CURIAM:
The claimant lessee brought this action for flood damage to personal property stored in a basement storage area in a faculty housing complex owned and maintained by the respondent lessor.
On June 27, 1996, the claimant signed an apartment lease for a two-bedroom faculty housing apartment on the respondent’s Morgantown campus. The lease agreement expressly incorporated terms of the West Virginia University Apartments handbook, which provides in relevant part:
The University assumes no liability for the loss, damage or theft of any of the tenant’s personal property resulting from explosion, fire, mechanical failure, water, steam gas line breaks or from any defective wiring; for loss or damage resulting from the negligence of any other residents of the building; for loss or damage resulting from the negligence of its employees or any other cause. It is suggested that proper insurance be obtained by the tenant to protect himself, his/her family and personal property.[5]
On or about July 19, 1996, the Morgantown area sustained an unusually severe rain storm, resulting in extensive flood damage throughout Monongalia County. The claimant/tenant had stored a substantial amount of personal property in a basement storage area of the faculty apartment complex. This property, stereo equipment, books, furniture and clothes, was also severely damaged. The claimant’s Notice of Claim seeks compensation in the amount of approximate $7,900.00. This matter was submitted on briefs of the parties on the issue of the legal effect of the liability exclusion contained in the lease and accompanying handbook.
The claimant makes two principal arguments: (1) that the contract is a contract of adhesion and that the exclusion language is therefore non-binding due the claimant’s lack of bargaining power; (2) that the exclusion is against the public policy that a landlord is obligated to provide' a habitable residence to a tenant. This public policy is clearly enunciated in the provisions of W.Va. Code §37-6-30 (1996), which state generally that a landlord is required to deliver and maintain premises in a habitable condition, and is required to make all repairs necessary thereto. This policy was also expressed by the West Virginia Supreme Court in Teller vs. McCoy, 253 S.E.2d 114 (W.Va. 1978), wherein the Court stated:
*67 There is, in a written or oral lease of residential premises, an implied warranty that the landlord shall at the commencement of a tenancy deliver the dwelling unit and surrounding premises in a fit and habitable condition and shall thereafter maintain the leased property in such condition. Syllabus No, 1.
Teller, at 128, further states that the determination of whether a landlord has breached the warranty of habitability is a factual question to be determined by the circumstances of each case.
The respondent’s position is that the terms of the contract are clear, unambiguous and legally binding upon the tenant, and that the claimant could have rented his apartment from any of a number of landlords in the Morgantown area. The respondent further distinguishes between the apartment and the storage unit to argue that there was no breach of warranty of habitability of the claimant’s apartment unit.
This Court has reviewed its prior decisions involving water damage to personal property in university housing facilities and notes that many of these claims involved students and were uncontested by the respondent. In Wickline vs. Board of Regents, 15 Ct. Cl. 163 (1984), the Court found the respondent’s employees were negligent in turning off heat during Christmas break, which resulted in frozen pipes and water damage. This ruling was based upon the terms of the housing and food service contract, which excluded liability except in the case of employee negligence. Other decisions were uncontested by the respondent. See: Rowsey vs. Board of Directors of the State College System, (CC-96-25), unpublished opinion issued May 1, 1995, and Li vs. Board of Trustees, (CC-96-13), unpublished opinion issued October 25, 1996, and Dimmick vs. Board of Trustees, (CC-94-520), unpublished opinion issued October 24, 1994.
The Court, having reviewed the record and the applicable law, is of the opinion that the terms of the lease and handbook are extremely broad and may, in some circumstances, abrogate-the stated public policy of the State of West Virginia that in a lease of residential premises, there is an implied warranty that a landlord shall provide and maintain dwelling units and surrounding premises in a fit and habitable condition. The Court notes that university housing is generally required of first-year students, while faculty housing is offered as a convenience to professors and faculty such as the claimant. When a faculty member signs a lease for faculty housing, he or she agrees to ábide by the terms of the lease in return for the convenience of those apartment units. A faculty tenant may choose other housing if he or she desires, while a first-year student will normally be required to live on campus. A liability disclaimer is therefore to be viewed with much greater skepticism when applied to student housing. Under the unique circumstances arising from special benefits of faculty housing, the Court is constrained to rule that the respondent’s lease disclaimer at issue does not present a clear abrogation of the State’s public policy of implied warranty of habitability.
Having ruled on the legal effect of the lease language, the Court must also examine the factual circumstances of this case. See Teller, supra. The evidence established that Monongalia County sustained extremely heavy rains in the vicinity of five inches in a short period of time. Flood damage was widespread throughout the county, and the respondent’s employees assisted in recovering the claimant’s property to the extent possible. The only evidence of negligence proffered by the claimant is a statement that construction of the housing complex at issue changed the natural drainage pattern in the area. The Court is of the opinion that there is insufficient evidence of negligence on the part of the respondent upon which to base a claim. Therefore, in view of the foregoing, the Court does hereby deny the claim.
Claim disallowed.

The evidence is conflicting as to whether the claimant received a copy of this handbook.